Good morning. Good morning, and please support. I'm Eric Plackey for Appellant Montgomery. In this case, the District Court clearly erred when it found, and I'm quoting from pages 62 to 63 of the Joint Appendix, that there was an attempted breaking and entering for the purpose of committing a new felony, that being to terrorize. That's the specific finding, that intent to terrorize, that's really at issue here. This is not a case where there are, as this Court said in Stevenson, two permissible views of evidence. Rather, this is a case where there's simply no evidence of intent to terrorize. Whether or not there's intent is a factual question, right? It is. So we review a decision that there was intent for clear error. For clear error, yes. Okay. And that's what Stevenson addresses, is that standard of review for clear error. And Stevenson said, if there's two permissible views, then you can't have clear error. But here, there's not two permissible views, because there's... How is having a loaded gun kicking the front door, kicking the back door, coming on property without written consent when you're not supposed to otherwise, not at least... How does that not go in some way to the finding the District Court made? It certainly goes to the intent to enter unlawfully, the kicking, and the fact that he wasn't supposed to be there without the consent, although he had been, according to EM, the estranged girlfriend, he had been there earlier. You'll recall that the 911 call, she tells the operator he has returned or come back. And you consider that positive, returning back with a gun? It's not positive. It's certainly not good behavior. But the fact that he has a gun is obviously... A loaded gun, by the way. A loaded gun. It's a revolver, so there are rounds in the cylinder. But what we don't know, and this is partly related to the absence of evidence, is how EM even knew he had a gun. It would be one thing... What difference does it make whether she knew or not? Excuse me? What difference does that make? The statute focuses on his intent. Right. Not what the recognition of what he's doing is. Well, that goes to what I'm about to say about what he was doing with the gun. Okay. We don't know because there's simply no evidence presented of whether the gun was pointed or brandished or at least displayed or just tucked in a waistband. Well, can I ask you about that? Because your brief says that she may not have even known, but as I read both the factual basis of the plea and the PSR, they both say, quote, EM called 911 to report that an armed man was attempting to break into her house. I don't know how a person who doesn't perceive someone as being armed would report him as an armed man. So even assuming that... I mean, I'm inclined to agree with Judge Motz that it doesn't really matter if she knows, but even assuming that it does, doesn't the factual basis of the plea stipulate that she represented that she was aware that he was armed? She did say, yes. Then why does it matter how she knows? As long as she knows he's armed, why does it matter on what basis she knows that? Because that is indicative of both his intent, whether he's brandishing, pointing the gun, that kind of thing, or whether, again, it was simply a gun he had with him, but it also goes to the degree of fear that she experienced. Okay, I just want to be sure I understand this argument.  That he is not, he would not be guilty of terrorizing anybody. You have to wave it around, point it at somebody. Is that right? Is that your argument? It depends upon the entirety of the circumstances. What the person does with the gun is certainly part of it. But again, on these facts, on this record... Well, on this record, my colleague has just pointed out to you, he's trying to get into one door, he's breaking into one door, breaking into another with the loaded gun in his hand. Well, actually, the only time that the record establishes that the gun is in his hand is when he places it between the back door and apparently a screen door. Right. Whether it was in his hand before that... Well, he had to get from his hand to there, right? Unless it was in his pocket, in his waistband, in a coat. Again, absent... Well, at some point, he had to take it from the pocket, the waistband, or whatever, to put it in his hand and put it down. I mean, it didn't fly. Or if he threw it down, that might be terrorizing. But anyway, go ahead. But at that point, he's trying to hide the gun. He's not using it to threaten anybody or seek to terrorize. Well, but maybe there's an innocent explanation for that, but maybe there's not. And is there an argument, I suppose, that the fact that when he had reason to believe law enforcement was showing up, he felt the need to not terribly effectively hide the gun? I mean, again, if we're talking about a clear standard of review and a permissible view of the evidence, it strikes me that one permissible view of that behavior is that he knew he was up to something no good before then and was basically having a, I need to hide the evidence of the bad thing that I was just doing, which in some ways provides some modicum of evidence of what his intent was before the police showed up. Certainly, he was engaged in an attempted misdemeanor, breaking and entering, even without any intent beyond just the act. And sure, that's one interpretation, but another interpretation was, you know, as a person, I know how this looks. I just showed up at my estranged partner's house, brandishing a gun, trying to kick down the door. I probably shouldn't be holding a gun when the police arrive because that's going to look really, really bad, given what it was that I was doing right before they arrived. Well, it could be that it looks bad because of what I was doing. It could also be because it looks bad because I'm not supposed to be here to begin with. Or it could be it looks bad because I'm a prior felon. Aren't you making the point? I mean, you just offered three alternatives. I think the first one was, you know, the one that might be the worst for your client. And, I mean, under our standard of view, if any of those three are reasonable, you know, aren't we required to affirm? If a permissible view of the evidence establishes the intent to terrorize, all those others are short of that intent, are short of that intent. So you say it's not permissible for an interpretation of the facts to be, all right, I've been doing enough bad stuff here, including with the gun, you know, that my desire to hide it is to overcome the fact that I've been terrorizing or I had the intent to terrorize when I was breaking in. You don't think that's an even permissible view here? We would contend not, Your Honor. The court has already pointed to both the factual basis. The same language is essentially repeated in the pre-sentence report, which the court accepted. Interestingly, the government relies on the domestic violence protective order, which is at Joint Appendix 168 to 170, which was appended to its sentencing position paper. That's a consent order that has no findings and no conclusions about any prior behavior by this man or any potential risk or anything like that. So that doesn't really get them anywhere. And then the two officers that testified both recount the 911 call where EM says that the man has returned, again implying that he'd been there earlier that day, and certainly under certain circumstances, when he had her consent, that he could be there to visit. But there's no evidence in the record he had her consent to be there to visit. I know there was a statement by counsel at the hearing that he had been there earlier to visit his kids, but when I looked at the record, I don't see any evidence that he had previously been there by consent. Right. There's no evidence one way or the other. But then why isn't one permissible view of the inference is he was here before, I was scared, but I guess I didn't call the police then because he left, but now he has returned, and now I'm really scared because not only was he here and left, but now he's back. Why isn't that a permissible inference? For several reasons. There's no evidence about what went on before. I know, but if I call the police saying someone has returned, it strikes me that at minimum a permissible and probably the most natural inference is, I just, I don't, that's a weird way to refer. He's returned. That implies that there's some connection between what happened before and what's happening now, that I'm describing it, I just wouldn't describe my spouse coming home today after work as saying she's returned, just like she returned, it strikes me that there's a, there's something about the use of the word return that again, at least to me, strikes me as permissibly connoting that what's happening now is in some ways a continuation of what was happening before. A continuation, yes, but not an establishment of intent to terrorize. We were talking about the police officers. The only other things the police officers really added when they testified at sentencing was the second officer, Officer Carlton, confirmed that EM said when he asked her that the dents in the front door were not new and he confirmed that she wasn't interested in pressing charges even for a misdemeanor breaking and entering. Again, there's simply no evidence of him doing anything with the gun which relates to how she knew he had one and there's no evidence that he said anything that was threatening. The North Carolina courts require a high degree of fear, a state of intense fright or apprehension. In the Griffin case cited in the briefs, the court describes a violent attack. In the Walker case that's cited in Griffin and is also in the briefs, the court talks about the victim being violently beaten and about people, one or more people at least, making a comment to the effect of getter. There's nothing like that here. Nothing like that here. But that strikes me as why your client isn't also guilty of aggravated assault or some other crime. I mean it strikes me that it can't possibly, I mean I agree the facts of most of the cases I've been able to locate involve more extreme conduct directed at the victim but it strikes me that it can't be the case that the reason the victim wasn't assaulted is because the police showed up to prevent the assault from happening. It can't be that to violate a statute that is focused, as Judge Mott said, on the defendant's intent. It is a defense that the police stopped you from escalating the confrontation. No, I mean it's never going to be a defense. That means that it cannot be required that the defendant actually go through with a violent assault on the victim because that implies that you could never, no matter how much you terrorize someone, if the police show up before you lay a hand on them, you can't be guilty. Well, the violence there was one of the circumstances from which the court found the intent to terrorize. All I'm arguing is there is nothing like that here. The final point, if I may, the brief cite is unpublished decision from this court in Tabroom which is actually from the same district court, same U.S. And it's the same in that the underlying offense is a 922G offense. It's the same that there was a 911 call, but there's some differences. There, the defendant pulled his car into the yard across the walkway to the front door, according to the court, only steps from the front door. There, according to the 911 caller, he went back to his car to get a gun. And, importantly, there, the district court listened to the recording of the 911 call and concluded that the caller was, quote, quite scared. No recording offered here by the government. Thank you. Edmondson. Please, the court. Mr. Plackey. Veronica Edmondson for the government. As the district court rightly described, the events of August 6, 2020 were a terrifying situation. And that's on page 76 of the joint appendix. The court's findings were not erroneous and the legal analysis was sound. And for the reasons in our brief, we would ask that this court affirm the district court's decision. But before you get into that, could I just ask you a question? It's not preserved, but it was bothering me and I just wanted to get the government's take. I'm not sure this cross-reference is as obviously correct as everyone seems to think it is because, you know, the Bowdoin decision of this court addressed whether, well, 54A, breaking and entering with intent to commit a felony, is generic burglary. But the language the government relies on here wasn't added until almost 20 years later. And I mean, so I guess, could you just address, it doesn't seem to me self-evidently the case that our Bowdoin decision actually indicates that this was a correct crime. It's not been argued. It's a thousand percent forfeited. But could you just address that briefly for me? Yes, Your Honor. Thank you. The Bowdoin case stemmed from the Taylor case, the United States v. Taylor case from the Supreme Court, where the Supreme Court, in applying the definition of burglary, it was an unlawful entry into a building with the intent to commit a crime. And we would contend that that's exactly what happened here. But is terrorizing a separate freestanding crime under North Carolina law? Because before it was intent to commit a crime, which the Supreme Court and Taylor said that, I mean, that's classic common law burglary. But intent to terrorize someone is not obviously classic common law burglary. Unless terrorizing someone is itself a crime under state law, but I don't understand that to be a separate violation of North Carolina law. I have that question, too. The acts that would underpin any act of terrorizing would be a crime. Is there a statute you can tell us, you can refer us to, that says terrorizing is a crime? No, Your Honor. There is a terrorism statute, but it's not applicable under these facts. But the acts that would be required in order to terrorize someone would be a crime. And that would be the United States position on that. So standing alone? In other words, are there cases in which somebody has been convicted of terrorizing? No, Your Honor. There are cases where, obviously, folks have been says, I'm going to harm you in some way, and the other person has reasonable belief to believe that's going to occur. That would be an act of terrorism under this statute. And that would be terrorizing or could be terrorizing. Or an assault. That could also be terrorizing. But any facts that would underline the actual terrorizing of another person, the government would contend that would be a crime. It's just not going to be called terrorizing. The court found that it was hard to imagine why he had a loaded gun. Especially because there had been some contention he was there to visit his children. That was corroborated by the evidence on page 54 of the joint appendix when the officer saw him place the gun between the doors and the other officer found the loaded .38. The court found that she's calling 911. She clearly doesn't want him there. Officer Salava saw that the mail had returned and was actively kicking or attempting to get into the house. The caller acknowledged that he had tried to kick in the front door then went to the back door and was kicking, as one officer described, with the foot of his shoe. It wasn't the toe portion of his shoe. It was the bottom of his shoe. And as far as the gun being in his hand, of course it wasn't brandished as far as we know, but it was readily accessible because as soon as police showed up he was able to quickly hide it between those two doors. So it was readily accessible to him. But again, as this court stated earlier it is not what she knew or whether she was in fact terrorized is what his intent was. Counsel, what if there was no gun? What if the evidence was that he's back, he's kicking, he's gone to the back door and now he's kicking there. Everything is 911, all that sort of stuff. Is having the gun essential to the intent to terrorize? No sir, it's not. Would you think that evidence would support the conclusion without the presence of a loaded gun? Yes sir, I would. Because we have someone who has been ordered not to commit any further acts of violence which indicates there has been a prior act of violence between these two folks. He has come back, which again does not, it's almost a neutral fact. It's not necessarily a good fact or a bad fact, but the fact that he has come back now with a loaded gun has tried to kick in the front door, has now gone to the back door and is trying to kick it in. Even without the gun, those are acts of violence. Trying to break into someone's home where he's not allowed to be in a violent manner. As he's trying to again kick in the door with, it's not opening an already opened window, it's not anything like that, it's actually trying to break into someone's home. And that by itself would be violent. If this court has no further questions, the government would stand on its. Thank you very much, appreciate your argument. Sir, do you have any rebuttal? Yes your honor, thank you. Again, the government goes back to the domestic violence protection order and says, well that must indicate prior violence. But it's a consent order and on pages 168-170, and this is a standard fill-in-the-blank form, there are no blanks filled in. The only finding the court makes is that the parties were present and by whom they were represented. But your friend on the other side points out it says further acts of violence and normally if I say you shall not commit any further blank, it subsumes the idea that I have committed at least one previous blank. On page 170 of the joint appendix, it says it is ordered that the defendant shall not assault, threaten, abuse, follow, harass by telephone, visiting the home or workplace or other means, or interfere with the plaintiff. It doesn't say further acts. That's an important point. This is a consent order with no finding, no determination of any acts of violence between them. That can't support the inference the government seeks to draw there when there's no findings. And when it doesn't say additional acts, it just says shall not. So your position is just that a thin air, two parties agreed to not commit violence to each other without there ever being any concern about that to begin with? Well, these orders allow for agreements about being apart, or orders rather, about being apart, about not calling, about not visiting, harassing. It goes way beyond. Sure. The relief site goes way beyond actual protection from physical violence. And again, in the absence of findings of violence, it's that absence of evidence that's the problem here. The government didn't offer the 9-1-1 tape for the court to assess it, as happened in Taborn. The police officer's testimony was very brief. Didn't really add anything. The government didn't call EM to talk about what had happened earlier that day, what the returning was actually related to. The government didn't call EM to say, well, I knew he had a gun for X, Y, or Z reasons. Again, leaving us completely in the dark as to whether this gun was being tucked into his waistband, perhaps even the back waistband. Again, we're in the dark. No evidence from EM or from anybody else. And again, it's the government's burden about anything being said. It's that lack of evidence. That lack of evidence. Granted, this standard is only preponderance of the evidence. And granted that clear error is an uphill battle for someone in my shoes to undertake. Especially as third counsel in the case. However, it's that absence of evidence that gets us back to the initial point that under Stevenson, there have to be equally permissible views of the evidence. And we don't have that here. Thank you very much. Thank you. Appreciate your argument.
judges: Diana Gribbon Motz, A. Marvin Quattlebaum Jr., Toby J. Heytens